## Case No. 14,386.

UNION PAPER–BAG CO. v. NIXON et al.

[6 Fish. Pat. Cas. 402;[1] 4 O. G. 31.]

Circuit Court, S. D. Ohio. April 16, 1873.

PATENTS—SPECIFICATIONS—REISSUE—DRAWINGS—
RESULTS — ANTICIPATION — EQUIVALENTS —
MACHINE FOR MAKING PAPER BAGS.

1. A patent is not invalid because the specification does not describe such parts as practical use would at once suggest as necessary to render the machine efficient; nor because it does not mention a cam which is indispensable in the machine, when from the reciprocating motion required, and exactly described, an intelligent mechanic would at once properly locate this cam.

2. Where four drawings, which did not appear in the original pa ent, were inserted in the reissue: *Held*, that as the forms shown were clearly indicated by the original specification, they were legally added to the drawings of the reissue.

3. Because in a particular case. other tribunals, co-ordinate or appellate, have decided that certain words, when used in connection with their accompanying incidents, did import a claim for a result or principle, another tribunal should not treat these judgments as setting up formulas in all circumstances involving a similar meaning.

4. Words identical should be rendered as diversely as the conditions in which they are employed demand. in order not to defeat the fairly presumed intention of those who use them.

5. The reissued letters patent granted to Morgan, Whitney. and Priest. assignees of Benjamin F. Rice. March 6, 1860. for improvement in machines for making paper-bags. are not for a principle. Being capable of a different reading, and these being novel and meritorious devices and combinations for the accomplishment of a result to which they may be referred, it is the duty of the court to give them such a reference.

6. The second claim is for a supporting-bar, with its end distended and shaped so as to enable the oblique cut to sever the tube, and form a lap for the bottom of the bag, and is not antedated.

7. The third claim is a combination claim. including the roller which works in the supporting-bar. and the devices more immediately concerned in carrying forward the paper and giving it tension while it is severed, and is not antedated.

8. The first claim of the Rice patent is not infringed by the Morgan machine.

9. The second claim is for the bar only. not for the former. or any of the pulleys and other devices which, in the accident of association in the Rice machine, are mechanically connected with it.

10. The four leading features required in this bar enumerated. and *held* to be present in defendants' bar

11. The claim reaches in no way to the devices intended to perform collateral functions.

12. The seeming differences between defendants' bar and that of the patent, all depend upon collateral devices.

13. Objections to all the claims of the Pettee patent. except the eighth and ninth. overruled.

14. Eighth and ninth claims of Pettee patent *held* to be antedated.

15. The first and second claims of Pettee patent *held* to be infringed.

16. The essence of these first two claims. and substantially of the first four. is the quality of

adjustability. This is the subject of a patent, so far as it is embodied in practical instrumentalities to make it operative.

17. The patentee will be protected from obvious modes, readily adopted without invention, for accomplishing the same end.

18. The third claim is for the combination of adjustable forming-rollers, with a creasing pulley or pulleys.

19. The various forms of creasing apparatus used by the defendants. in combination with the guides or formers, *held* to be infringements of this claim.

20. It would be a blemish upon the law, which professes to protect useful improvements, if such substitutes, capable of selection by persons of ordinary intelligence were not deemed invasions of an inventor's rights.

21. The fourth claim is infringed both by the bent bars and by the adjustable pulleys.

22. An alternative claim is invalid only in those instances where it claims positively neither of several subjects, but is good, if all of many which are mentioned are claimed, as one or the other are employed by an infringer. The latter is the case with the third claim of the Pettee patent.

In equity. Final hearing on pleadings and proofs. Suit brought upon letters patent [No. 17,184] for an "improvement in machines for making paper bags." reissued to Morgan, Whitney. and Priest, March 6, 1860 [No. 920], as assignees of the original patent granted Benjamin F. Rice. April 28, 1857; afterward extended, seven years from the expiration of the original term, by the Union Paper-Bag Company, as assignees of the reissued patent and extended term of the same; also, suit brought upon letters patent [No. 38,452] for "improvement in paper-bag machines," granted Simon E. Pettee, May 6, 1863, by same complainant, as assignee of said last-named patent.

The claims of the reissue of the Rice patent are as follows: "1. I claim the machine as a whole, composed of mechanism for forming. feeding. cutting, pasting the tube or bag. combined or arranged, and operating substantially as described. 2. I also claim the use of a supporting-bar, or its equivalent, around which paper may be formed into a tube, and in connection with which the said paper tube may be severed, each and the whole, substantially as described. 3. I also claim giving the paper the variable feeding motion. for the purpose and in the manner substantially as described. 4. I also claim cutting the paper, without waste of material, in such a form as shall have suitable projections for the formation of the bottom lap or seam of the bag. and for the convenient opening of the bag at the mouth, substantially as described."

The claims of the Pettee patent are as follows: "Firstly. Hanging the spindle G, which carries the roll of paper to a plate, E, so secured to the frame as to be readily adjusted laterally thereon, for the purpose specified. Secondly. So connecting the plate D, which carries the roller I and the pasting device to

[1] [Reported by Samuel S. Fisher, Esq., and here reprinted by permission.]

the frame, that the whole may be adjusted laterally on the said frame for the purpose specified. Thirdly. Folding the continuous sheet by means of a pulley or pulleys. M, M, or their equivalents, in combination with the horizontal pulleys d. d. or their equivalents, to the same, the sharp edges of the pulleys forming the crease at the proper place in the paper. and the pulleys d, d, or their equivalents, turning down the fold, determined by the creasing pulleys, thereby dispensing with the objectionable 'former' used in the machines for making paper bags. Fourthly. So securing the creasing pulleys M, M, to the shaft L. that they can be adjusted thereon, in respect to each other and to the paper, for the purpose described. Fifthly. The roller h, h, secured to the bar P, and so arranged as to present a lateral sagging of the paper, without disturbing the creases made by the pulleys M. M. Sixthly. So constructing the revolving striker that the striking-bar can be moved to and from the center of rotation and secured, after adjustment, for the purpose specified. Seventhly. The revolving striker, when arranged in respect to the rollers v, v, and the rollers w and w', as and for the purpose herein set forth. Eighthly. Imparting to the pasting-blade 15. by the devices herein described, or their equivalents, the motion described to and from the pasting-roller, as well as the motion described to and from the folding-rollers, for the purpose herein set forth. Ninthly. The beveled portion of the blade 15, so formed and arranged as to conform, or nearly conform, to the circumference of the roller G, and so as to effectually transfer the paste to and spread it over the fold at the bottom of the bag, as described. Tenthly. The roller 7. with its annular projecting plate 2, 2. when combined and operating in conjunction with the paste-roller G, substantially as and for the purposes herein set forth."

[For engravings descriptive of the Pettee machine, see Case No. 14,387.]

George Harding and Fisher & Duncan, for complainants.

James Moore, for defendants.

EMMONS, Circuit Judge. It is due to counsel and to the court to say, that while examining this case we have been unable personally to peruse either the briefs or the record. Wholly unaccustomed to labor through the reading of others, and unable to make the memoranda which long habit renders a necessity, we have found it impossible to dictate with anything like satisfaction even the outlines of conclusions. These circumstances forbid all attempts to verify by citations the legal conclusions we announce. It must be apparent that in these circumstances we must have less confidence in the general result.

The objection, that the specifications of the Rice patent are so imperfect that a working machine could not be made from them, has given us much trouble. Various criticisms of the experts, which assert the impracticability of the described machine, without certain readily perceived additions, are not among those which have created doubt. The necessity for a spring. a weight, a slight difference of mere dimensions, or other quite obvious modifications which practical use may suggest to make the machine more efficient, would not render invalid otherwise sufficient specifications; certainly not, if it would work without them. Here, however, an important device, without which it could not operate at all. is wholly omitted. An intelligent assistant and expert are unable to find it in either the specifications or the photo-lithographic copies of the patent office drawings. To this precise defect the complainant's counsel directed the attention of neither of his expert witnesses, nor has he referred to it in argument. It is rested upon the general unreasoned assertion of Renwick & Morgan, that from the specifications and drawings they could make an operative machine.

Four cams on the main shaft are indispensable. Stated in the order in which they occur. the first moves the presser-bar; the second, the pasting-knife; the third gives the reciprocating motion to the pasting-rollers and the devices connected with them: and the fourth, the severing-blade. That which is required to give this motion to the pasting-rollers is wholly omitted. This error is accompanied by another, which refers to the cam which moves the presser-bar. as the one which is to perform the function of that which is not described at all. Such an office by it is impossible: another cam on the main shaft for this purpose is necessary. The specifications and drawings are to a scale. The exact reciprocating movement required for these bottom pasting-rolls and accompanying devices is given, and the location of the cam on the main shaft to impart it is in no degree doubtful. A hundred intelligent mechanics would all, necessarily, from data given. locate it in the same place. Its shape and dimensions result from mathematical calculations, well understood by all educated mechanics. The arms and connecting-rod, in order to enable it to perform its office, are among the most familiar devices, and we can not agree with the experts who have sworn so pointedly. that invention would be necessary to supply the omitted features. There is no other instrumentality, except this cam, arms, and connecting-rod, which would suggest themselves to a builder by which this omission could be supplied. They are so common and obvious. they would be inserted by a mechanic as readily as a driver would put the fourth wheel on the naked axle of his coach.

It is objected that the reissue of the Rice patent is void because it contains new matter. Four drawings. representing bags to

be manufactured by the machine, which did not accompany the original patent, are referred to as bringing the case within the rule. These forms were clearly indicated by the original specification, and may be legally added to the drawings of the reissue.

It was presented in this connection in the brief, and therefore somewhat out of order. We have referred to the objection that the original patent was for a machine and the reissue for a principle, and therefore void. It is of no consequence, so far as this question is concerned, that the original patent is different; it may illustrate the argument, but it is of no other consequence. Our judgment upon other points with sufficient fullness shows that we do not consider any of the claims in the latter subject to such an objection. That they may be so construed, without violence to language, is clear. That some judgments of authority have so rendered nearly equivalent words, is conceded. It is a mere matter of construction. Did the solicitor intend to make a void or a lawful claim? The decisions leave this to be decided in view of the art, the character of the machine, the entire specifications, drawings, and claims. Few cases constitute precedents for others. Because in a particular case other tribunals, co-ordinate or appellate, have decided that certain words, when used in connection with their accompanying incidents, did impart a claim for a result or principle, another tribunal should not treat these judgments as setting up formulas in all circumstances involving a similar meaning. They assert no such rule. All go upon a full critical review of the accompanying facts in reference to which they have been used, excluding the idea that other courts are not to perform the same duty. Words identical should be rendered as diversely as the conditions in which they are employed demand, in order not to defeat the fairly presumed intention of those who use them. Applying to these claims the rules of interpretation applicable to all other instruments, we do not think that construction necessary which renders them void. Being capable of a different reading, and these being in fact a novel and meritorious set of combinations and devices for the accomplishment of a result to which they may be referred, we understand it to be a duty to give them such a reference.

It is said the first claim of the Rice patent is for the machine, technically so-called, and demanding for its validity the novelty of all its parts. It is held to be a combination claim.

It is conceded that if the second claim is for a supporting-bar, with its end distended and shaped so as to enable the oblique cut to sever the tube and form a lap for the bottom of the bag, then it is not antedated. That we so construe it, will more fully appear hereafter. It is only when held to be a former, without more, that there is any claim it is not novel. This objection is not sustained.

The third claim of the Rice patent, it is alleged, is also antedated. If it is construed to include only the eccentric spur-wheel and its fellows on the side of the machine, and the shaft connected therewith, then it was suggested to Pettee by Morgan, and taken from Willis' Principles of Mechanism, p. 256. It is, however, a combination claim, including the roller which works in the supporting-bar, and the devices more immediately concerned in carrying forward the paper and giving it tension while it is severed. So construed, it is not claimed to be old.

It is also argued in this connection that as Rice knew this eccentric cog-wheel was old, it avoids his whole patent. This objection is disposed of by our construction of the claim. It is not for the mechanism he knew to be old. The fourth claim has been abandoned by the complainants.

The first claim of the Rice patent, as construed, is not infringed by the Morgan machine. It is unnecessary to refer to other features than the omission of the intermittent feed motion and the substitution of the revolving instead of reciprocating knife.

That the second claim of the Rice patent is not infringed has been argued with great pertinacity and extended discussion. Were we considering the case in much more fortunate circumstances, all its details could not be dealt with. In the present unfortunate condition, but little more than conclusions can be stated.

This claim is for the bar only, not for the former or any of the pulleys and other devices which in the accidents of its association in the Rice machine are mechanically connected with it. It does not form the tube, and, what is unnecessary for the purposes of this judgment to say, no part here claimed even aids in doing so. Decrease the size of the bar over the forming device to that of the defendants' and the tube will still be formed, and if not, no such property in the bar is claimed. It is for a bar around which a tube may be formed, and not for one which will form it. Nor is this mere literalism. Four leading features are required. First, that it be sustained in place at a point so far removed from the forming device, no matter what that may be, as to enable the paper to be gradually bent into a tube, that the connection with the bed or table which sustains it in place shall be on the same side of the bar where the side lap of the tube is formed and pasted, so that the forward movement of the material may meet with no obstruction upon the top, along which it proceeds; that this point of support, which so sustains it in place, shall be in the rear of the locality where the tube is completed, by being united and pasted; and it must also have an end of sufficient size to distend the tube for severing, so as to form the lap for the bot-

tom of the bag. These conditions are all found in the defendants' bar, and all the others in every machine before us. They are all necessary to enable a tube to be formed around it, to travel unobstructedly its whole length while being formed on its passage by other collateral devices, and, arriving at the distended end, to be severed without waste, to form the desired lap. The essence inheres in the conditions which give it this capacity. The contrivances to accomplish it are as ingenious as they have been beneficial to the public. Turning the bar upside down upon a bed or table, making its dimensions from the head backward smaller, omitting the cutting-edges, and the other alterations by the defendants, do not escape infringement. The side guides on the Morgan machine, the rollers that work by the side of the bar instead of through it, the rollers in the Rice bar, the fact that by its weight or spring it presses these rollers on others beneath them, to pinch, carry forward, and paste the paper, we do not consider as included in this claim. It reaches in no way to these devices intended to perform collateral functions. The bar around which a tube may be formed and so held in place with its tube-distending end, and in connection with which it may, without waste, be severed in a direction to create a lap, is all which is claimed. Just such a bar, literally, the defendants use. The patent would enable them to make it. The seeming differences all depend upon the other and collateral devices for pasting, forming, carrying forward, and completing the bag. Remove all these from both bars, and with the wholly immaterial diversity of lessened dimensions in the rear of the all-important head, it is identical in function, form, and mode of operation.

It is admitted that while the defendants used what is called the Rice machine, they infringed the first, second, and third claims of that patent.

There is much proof to show that the Pettee patent is antedated. With some hesitation, we overrule the objection as to all the claims, save the eighth and ninth.

The defendants' testimony to show want of novelty in the first, second, third, and fourth claims is very strong. Without a description of the machinery, the relation of the parties, the transfers of title, the condition and interest of each witness at the time he testified, and a multitude of circumstances, which we can not reproduce, a minute analysis of the testimony would be unintelligible. That which annexes all these devices to the Morgan machine early in September, 1860, is the most formidable. There is much quite as positive in character, to show that they were all on the Armstrong machine when Pettee was introduced to it, before the date of his own invention. Much of the conflict might naturally result from imperfect memory, while other portions, on one side or the other, are undeniably corrupt.

Substantially, and without exact accuracy, the history out of which this part of the contest springs is as follows:

The condition of the art in 1860 materially affects this question of fact. In the latter part of August, in that year, Morgan, being the assignee of the Rice patent, worked in Philadelphia a machine like his model, and which was an improvement of the former by the addition of the revolving knife. For this he obtained a patent in 1863, without making any claim to these devices. Armstrong, the other person alleged to have invented them at the same time and at the same place, was working a machine, and, as we think, without them. It severed the tube with the lap, but had no apparatus for pasting and finishing the bottom of the bag. September 1, in that year, he made a contract with Pettee to add machinery for that purpose, and to share with him any patent which might be procured for their joint invention. He then had pending an application for a patent, in which no right is asserted to anything contained in these claims. He was entitled to one-half of the Pettee patent, which does claim them, and, we infer, promoted its procurement. We have not examined the proof in this regard, but it was conceded at the bar that he took a license under it. We assume, also, he participated in and reaped a part of the benefit of its transfer to these complainants. Immediately after the date of the contract, September 1, 1860, Pettee entered upon the work of improving Armstrong's machine, and swears circumstantially that he added the devices in question. He alone, of all those who are asserted to be the inventors, claimed and procured a patent for them. We conclude the facts are what all this public action by Morgan, Armstrong, and Pettee indicate, that each invented what he claimed, and was not the inventor of what he omitted to claim. Each knew of the action of the other. There is a large amount of most significant action in regard to this question since the granting of the patents. All of it is in harmony with our theory. The oaths of some of these parties, and the irrational explanations by which they attempt to account for passively resigning to another what they knew they were entitled to, are incredible.

In reference to the eighth and ninth claims of the Pettee patent, the respondents' testimony is full, that the pasting-knife and the other devices connected with it were used by Morgan before their adoption by Pettee. Nothing in the least contradicts this. We reluctantly hold that these two claims were antedated. We say reluctantly, because there is much which raises the supposition that if attention had been directed to these devices as pointedly as to those included in the first, second, third, and fourth claims, the result would have been the same. We

may be mistaken, but there seems to be an implication in the argument that the plaintiff's evidence does include them. However this may be, the conclusions from the record as it is can but be as declared.

The first and second claims of the Pettee patent are infringed. It is argued by the defendants that they include only the slot and screw which fastens the bottom of the frame to the bed, and are not therefore infringed, unless some mechanical device is employed to effect that purpose. The defendants' frames are held in place by their own weight only. The essence of these two claims, and substantially of the first four, is the quality of adjustability. This is the subject of a patent, so far as it is embodied in practical instrumentalities to make it operative. The patentee will be protected from obvious modes, readily adopted without invention, for accomplishing the same end. A screw, a cord, a weight, either laid upon or included in a heavier construction of the frames, or other obvious modes, which would hold them in place while at work, and secure adjustability, would infringe the patent. They would cease to do so only when they accomplished it in a mode which requires such invention as to be the subject of a patent. The defendant has not escaped infringement by making his frames so heavy that they will lie in position without a slot and screw. He has so secured them to the table as to obtain adjustability, within the meaning of these claims.

The third claim is for the combination of adjustable forming-rollers with a creasing pulley or pulleys. The defendants, in their industrious changes, in order to avail themselves of this feature of adjustability, have successively adopted different forms of creasing apparatus, in combination with the guides or formers. We think them all infringements. The last resort, and that most earnestly defended, is two rounded bars or hooks suspended from a frame and adjustable with a slot and screw, by coming in contact with the paper at the same point, and having in all respects the same relations to the residue of the machine. They perform in the same mode the function of the creasing-rollers. The only imputed difference we are able to glean from the elaborate argument is that the friction from the bent bars is greater than that of the rollers. Various other immaterially varied forms so pressed in contact with the moving paper as to crease it would also increase the friction. But it would be a blemish upon the law, which professes to protect useful improvements, if such substitutes, capable of selection by persons of ordinary intelligence, are not deemed invasions of an inventor's rights.

That the fourth claim is also infringed by these bent bars is involved in what is just said; that the adjustable pulleys did so is conceded. While the Morgan machine was worked with the single creasing pulley, it did not infringe this fourth claim for an adjustable one.

It is also said the third claim is void, because in the alternative. An alternative claim is invalid only in those instances where it claims positively neither of several subjects, but is good if all, of many which are mentioned, are claimed, as one or the other are employed by an infringer. If it is said A or B is claimed, this asserts a right to neither; but to claim the one or the other, as either are used, with an assertion that it has been discovered both are interchangeably available for specified purposes, is not an alternative claim, within the case cited by defendants. Such is the third claim in this case. Decree for injunction and account.

[For a subsequent suit between the same parties, and involving the same patent, see Case No. 14,391.]